# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERONICA BROWN, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | Case No. 15 C 6729 |
| v. ) ) | |
| ABM INDUSTRIES, INC., et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 17, 2015, Plaintiff Veronica Brown, individually and on behalf of all others similarly situated, filed the present Second Amended Collective and Class Action Complaint alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") based on Defendants' alleged failure to pay overtime compensation for all hours worked in excess of 40 hours in a week. Before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), as well as Defendants' Rule 12(f) motion to strike. For the following reasons, the Court denies Defendants' motion to dismiss. The Court, in its discretion, grants in part and denies in part Defendants' motion to strike.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under

Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When reviewing the sufficiency of a complaint under the *Twombly/Iqbal* plausibility standard, courts must accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See Tierney v. Advocate Health & Hosp. Corp.,* 797 F.3d 449, 451 (7th Cir. 2015). The relevant question at the motion to dismiss stage is not whether the plaintiff will ultimately prevail on the merits, but whether the complaint is sufficient to cross the federal pleading threshold. *See Skinner v. Switzer,* 562 U.S. 521, 529-30, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011).

## II.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise as a federal court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When bringing a facial challenge to subject matter jurisdiction under Rule 12(b)(1) "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (citation omitted). The party invoking federal jurisdiction bears

2

the burden of establishing the required elements of standing. *See Johnson v. U.S. Office of Personnel Mgmt.,* 783 F.3d 655, 661 (7th Cir. 2015).

**III.     Motion to Strike – Federal Rule of Civil Procedure 12(f)**

"Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed.R.Civ.P. 12(f)).  Motions to strike are generally disfavored, but may be appropriate if they serve to expedite litigation.  *See Heller Fin., Inc. v. Midwhey Powder,* 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no relation to controversy).  District courts have considerable discretion to strike allegations under Rule 12(f).  *See Delta,* 554 F.3d at 1141-42.

## BACKGROUND

In her Second Amended Complaint, Plaintiff brings her FLSA and IMWL claims against Defendant ABM Industries, Incorporated ("ABM Industries") and its subsidiaries, which provide janitorial services for large office buildings in Chicago and employ thousands of hourly paid janitors. (R. 30, Second Am. Compl. ¶¶ 14, 15.)  Plaintiff alleges that during the statutory period, Defendants used three methods of timekeeping, namely, handwritten time sheets, punch cards, and electronic timekeeping devices. (*Id.* ¶ 53.)  This case involves janitors who used handwritten time sheets. (*Id.* ¶ 54.)  According to Plaintiff, Defendants instructed and required janitors to write down and record only their scheduled hours on handwritten time sheets, rather than record all of the time worked each work day and workweek. (*Id.* ¶ 55.)  Plaintiff specifically alleges that during the relevant statutory period, Defendants had a policy that

3

required janitors to collect and prepare their cleaning supplies and equipment prior to the start of their scheduled shift time, but did not pay them for this pre-shift work. (*Id*. ¶ 58.)

## ANALYSIS

**I.      Motion to Dismiss**

In the present motion to dismiss, Defendants explain that this is the fifth collective/class action that Plaintiff's counsel have filed against ABM and its affiliates. Defendants posit that the key distinction in the present lawsuit is that Plaintiff and the putative class allegedly spent unpaid, pre-shift time gathering and preparing their supplies and recorded their time on paper time sheets – not via punch cards or electronic timekeeping devices. Defendants move to dismiss based on Plaintiff's lack of standing arguing that Plaintiff has failed to allege an employer-employee relationship with any of the named Defendants. In their opening brief, Defendants focus on the FLSA's definition of "employer" and maintain that Plaintiff has failed to allege that the four ABM entities at issue are joint employers under the "economic reality test." (R. 32, Open. Brief, at 5.) To give Defendants' argument context, the Court first examines the FLSA's definitions of "employee" and "employer."

The FLSA imposes minimum hourly and overtime wages for employees who are "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). As such, at this juncture, Plaintiff must sufficiently allege that she is an employee who is engaged in commerce (individual-based coverage) or that her employer is an enterprise engaged in commerce (enterprise-based coverage). *See Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 295, 105 S.Ct. 1953 (1985). Thus, to address Defendants'

argument, the Court must determine whether Plaintiff has sufficiently alleged that Defendants fulfill the definition of employer under the FLSA. An employer is an "enterprise" covered under the FLSA if it "has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i),(ii).

In response to Defendants' motion, Plaintiff maintains that whether a FLSA defendant is an "employer" or "joint employer" is a substantive element of a plaintiff's claim – not a jurisdictional requirement, and thus Defendants' argument does not concern subject matter jurisdiction. To date, the Seventh Circuit has yet to address whether meeting the statutory definition of "employer" in the context of the FLSA is a jurisdictional requirement or statutory element, but has "held that failure to meet the statutory definition of an employer in a Title VII or ADEA context is not a defect of subject matter jurisdiction but an ordinary failure to meet a statutory requirement." *Saperstein v. Hager*, 188 F.3d 852, 855 n.1 (7th Cir. 1999). Moreover, courts in this district have concluded that a challenge to whether an employer is a covered enterprise under the FLSA relates to the merits of the claim and not subject matter jurisdiction. *See Torres v. Pallets 4 Less, Inc.,* No. 14 CV 4219, 2015 WL 920782, at *3 (N.D. Ill. Mar. 2, 2015) (collecting cases).

The Court agrees with the reasoning in these cases, especially in light of the United States Supreme Court's decision in *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). In *Arbaugh,* the Supreme Court held that the issue of whether a party is an

5

"employer" under Title VII was an element of the party's claim – not a jurisdictional requirement. *See id.* at 516. In particular, the Supreme Court noted that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination." *Id.* at 511 (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p. 12–36.1 (3d ed. 2005)). After reviewing the definition of employer under Title VII, namely, 42 U.S.C. § 2000e(b), the Supreme Court concluded that whether an employer falls within this definition is a merits-based determination and held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh,* 546 U.S. at 516.

Similarly, the FLSA's definition of employer under 29 U.S.C. § 203(s) does not suggest that it is jurisdictional, but instead, it is an element of a plaintiff's claim. *See Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 33 (1st Cir. 2007); *Jian Long Li v. Li Qin Zhao,* 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014); *Gilbert v. Freshbikes, LLC,* 32 F. Supp. 3d 594, 601 (D. Md. 2014); *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Officials,* 955 F. Supp. 2d 50, 53 (D.D.C. 2013); *Rodriguez v. Diego's Rest., Inc.,* 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009); *Saleen v. Waste Mgmt., Inc.*, 610 F. Supp. 2d 1026, 1031 (D. Minn. 2009). The Court therefore reviews Defendants' challenge to the merits of Plaintiff's allegations under Rule 12(b)(6).

### A. Plaintiff Has Sufficiently Alleged That Defendants Are Joint Employers

Turning to whether Plaintiff has sufficiently alleged that the named Defendants are employers, it is well-settled that "[t]wo or more employers may jointly employ someone for the purpose of the FLSA." *Karr v. Strong Detective Agency, Inc.,* 787 F.2d 1205, 1207 (7th Cir.

1986); see also 29 C.F.R. § 791.2. Citing *Brunner v. Liautaud,* No. 14 C 5509, 2015 WL 1598106, at *3 (N.D. Ill. Apr. 8, 2015), Defendants assert that whether they are joint employers under the FLSA depends on the "economic reality" of the parties' relationship. *See also Karr,* 787 F.2d at 1207. Under the Department of Labor's regulations:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
>> (1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
>>
>> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>>
>> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted); *see also Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 608 (7th Cir. 2014). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a)).

Viewing the totality of "the circumstances of the whole activity," *see Karr*, 787 F.2d at 1208, Plaintiff has plausibly alleged that ABM Industries is acting directly or indirectly in the interest of the other ABM entities as outlined under 29 C.F.R. § 791.2(b)(2). *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7

In particular, Plaintiff alleges that during the relevant time period, ABM Industries was the parent corporation of ABM Onsite Services, Inc., ABM Janitorial Services, Inc. (now known as ABM Onsite Services, Inc.), and ABM Janitorial Services – North Central, Inc. (Second Am. Compl. ¶¶ 26, 129.) Plaintiff maintains that ABM Industries' wage and hour policies, including policies regarding overtime pay, are established by ABM Industries and implemented by its wholly-owned subsidiaries. (*Id.* ¶¶ 132-34.) Further, Plaintiff asserts that ABM Industries provides company-wide wage and hour instructions and training to the regional subsidiaries. (*Id.* ¶ 135.) According to Plaintiff, ABM Industries' in-house counsel advises and instructs all of its regional locations, officers, and subsidiaries to implement or change their wage and hour policies and practices. (*Id.* ¶¶ 145-46.) Also, Plaintiff alleges that ABM Industries – as the corporate parent – has only one legal department which serves all of ABM Industries' regions, subsidiaries, and affiliates, including those in Illinois. (*Id.* ¶ 147.) Plaintiff additionally contends that ABM Industries trains its supervisors, operations managers, and branch managers to instruct janitors to arrive early and collect their supplies and equipment before their paid shift begins. (*Id.* ¶¶ 85-86.) Further, Plaintiff articulates that after she complained to her supervisor about not being paid for all of the hours she worked, her supervisor told her that nothing could be done about it because the decision not to pay for pre-shift work came from ABM management. (*Id.* ¶ 70.) According to Plaintiff, ABM Industries, directly or indirectly with the other named Defendants, established a policy that forbids payment of overtime to janitors unless it is pre-approved. (*Id.* ¶ 161.) Under these facts, Plaintiff has sufficiently alleged that Defendants collectively constitute a joint employer for purposes of the FLSA.

**B. Article III Standing**

Nevertheless, despite Defendants' arguments in their opening brief that Plaintiff failed to sufficiently allege that the named Defendants are joint employers, in reply, Defendants argue that Plaintiff "misses the point" regarding their standing challenge. In particular, Defendants argue that Plaintiff cannot establish Article III standing to bring her claims because she has failed to sufficiently allege an injury that is fairly traceable to the challenged action of each named Defendant. Based on this argument, the Court directed Plaintiff to file a sur-reply addressing this issue.

"To establish Article III standing, 'a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Silha v. Act, Inc.,* ___ F.3d ___, 2015 WL 7281602, at *3 (7th Cir. Nov. 18, 2015) (citation omitted). In reviewing Defendants' facial challenge, the Court accepts Plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in her favor. *See id.* at *4 ("when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)").

With this standard in mind, Plaintiff has plausibly alleged an injury that is fairly traceable to the action of each Defendant – keeping in mind that the alleged injury is Defendants' failure to pay Plaintiff overtime based on Defendants' policy of requiring janitors to collect and prepare their carts and supplies before the start of their scheduled shift without pay. *See Iqbal,* 556 U.S.

9

at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). First, Plaintiff alleges that ABM Industries, the corporate parent, was engaged in the business of providing janitorial services in Illinois and operated through its wholly owned subsidiaries. (Second Am. Compl. ¶¶ 22-25.) ABM Industries, as the corporate parent, acts as a single, integrated enterprise with its national and regional subsidiaries. (*Id.* ¶¶ 13-15, 21, 24-25, 27-28, 129-31, 135-154, 157-62.) Plaintiff further alleges that ABM Industries originated the rounding policy, namely, not paying janitors for pre-shift work, and that this rounding policy was mandatory for the regional and national subsidiaries. (*Id.* ¶¶ 130, 139-42, 146-47, 157-59.) Also, Plaintiff contends that ABM Industries jointly – with the national and regional subsidiary Defendants named in this lawsuit – implemented, controlled, and enforced this rounding policy and subjected Plaintiff and the class to that policy. (*Id.* ¶ 27.) According to Plaintiff, ABM Industries trained supervisors, including her supervisor, to report the scheduled shift hours, but not all of the time worked, especially the pre-shift work. (*Id.* ¶¶ 62-68, 143, 146, 157-58.) Moreover, Plaintiff alleges that ABM Industries employed her and the putative class members. (*Id.* ¶¶ 16, 28, 59, 137.)

Likewise, Plaintiff has plausibly alleged that the injury at issue in this lawsuit, namely, Defendants' failure to pay overtime based on their policy of requiring janitors to collect and prepare their carts and supplies before the start of their scheduled shift without pay, is fairly traceable to the conduct of ABM Industries' national subsidiary, ABM Janitorial Services, Inc. (now called ABM Onsite Services, Inc.). Specifically, Plaintiff alleges that ABM Janitorial Services, Inc., as a national subsidiary, is engaged in the business of providing janitorial services

10

as a wholly-owned subsidiary of the corporate parent, ABM Industries, Inc. (*Id.* ¶¶ 29-31, 38-40.) As the national subsidiary, ABM Janitorial Services, along with the corporate parent ABM Industries, implemented and controlled the rounding policy and subjected Plaintiff and the collective class to this policy. (*Id.* ¶¶ 35, 43.) Furthermore, Plaintiff states that ABM Janitorial Services employed her and all members of the putative class. (*Id.* ¶¶ 16, 36, 44, 59.) Plaintiff also maintains that ABM Janitorial Services trained supervisors, including her supervisor, to report scheduled shift hours instead of all of the time its employees worked. (*Id*. ¶¶ 62-68, 143, 146, 157-58.) Plaintiff alleges that the regional subsidiary, ABM Janitorial Services – North Central, Inc, enforces the national subsidiary's policy and that the rounding policy systematically deprived the putative class of their earned wages for this pre-shift work. (*Id*. ¶¶ 109-17.)

Last, Plaintiff alleges that ABM Janitorial Services – North Central, Inc., as the regional subsidiary, provided janitorial services in the State of Illinois and is a wholly owned and controlled subsidiary of the national subsidiary, formerly known as ABM Janitorial Services. (*Id*. ¶¶ 45-49.) She further states that ABM Janitorial Services – North Central, jointly with the parent and national subsidiary, implemented, controlled, and enforced the rounding policy at issue. (*Id*. ¶¶ 50, 130.) Moreover, Plaintiff alleges that ABM Janitorial Services – North Central employed her and the putative class members. (*Id*. ¶¶ 16, 51, 59.) Similar to the parent and national subsidiary, Plaintiff asserts that ABM Janitorial Services – North Central trained supervisors to report the hours from scheduled shifts instead of the actual time worked, and that this policy systematically deprived her and the class their earned wages for pre-shift work. (*Id.* ¶¶ 13-14, 62, 106, 157-59.) Accepting Plaintiff's well-pleaded factual allegations as true and

11

drawing all reasonable inferences in her favor, she has sufficiently alleged that the alleged injuries at issue are traceable to ABM Janitorial Services – North Central, Inc.'s conduct.

Because Plaintiff has plausibly alleged standing under the circumstances, the Court denies Defendants' motion to dismiss brought pursuant to Rule 12(b)(1).

## II. Motion to Strike

In their Rule 12(f) motion to strike, Defendants argue that Plaintiff has included allegations that do not pertain to the present lawsuit, including allegations regarding punch cards and electronic timekeeping devices. Although Plaintiff's claims are based on the putative class recording the amount of time they worked on paper time sheets, Defendants have not established that these additional allegations are "redundant, immaterial, impertinent, or scandalous matter" per Rule 12(f). In fact, these allegations relate to the present lawsuit by giving context to how ABM Industries and its subsidiaries are inter-related and clarify the rounding policy at issue. Similarly, Plaintiff's statements about ABM Industries' SEC Form 10-K, Code of Business Conduct, and the United States Department of Labor's ("DOL") investigation add context to Plaintiff's claims. The DOL's investigation, for example, explains the rounding policy in the context of the national subsidiary's interaction with another regional subsidiary.

In contrast, Plaintiff's allegations regarding the minutiae of similar lawsuits against ABM Industries and its subsidiaries are "unnecessary clutter." *See Heller Fin.,* 883 F.2d at 1294 (if "motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay" litigation). The Court, in its discretion, grants this aspect of Defendants' motion to strike.

On a final note, Defendants' argument that Plaintiff has failed to properly allege an employer-employee relationship with any of the named Defendants dovetails into their motion to

strike because their employer-employee argument is based on several inconsistencies in the Second Amended Complaint. Plaintiff, for example, alleges that she worked for Defendants from 2009 until March 2013, but also alleges that she worked for Defendants from 2007 until May 2013. (Second Am. Compl. ¶¶ 16, 59.) Also, whether Plaintiff included allegations about another regional subsidiary to give context to her claims or whether Plaintiff mistakenly added this regional subsidiary as her employer is a matter of inartful pleading, not standing. The Court thus grants Plaintiff leave to file a Third Amended Complaint to "clean up" these inconsistencies, as well as the extraneous allegations regarding other lawsuits.

## CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss and grants in part and denies in part Defendants' motion to strike [31]. Plaintiff has leave to file a Third Amended Complaint consistent with this ruling on or before December 14, 2015. Defendants must answer the Third Amended Complaint on or before January 7, 2016.

**Dated:** December 1, 2015

              ENTERED

              _____
              **AMY J. ST. EVE**
              **United States District Court Judge**